Slip Op. 07-86

UNITED STATES COURT OF INTERNATIONAL TRADE

_____
                                              :
SKF USA INC., SKF FRANCE S.A.,                :
SKF AEROSPACE FRANCE, SKF                     :
GmbH and SKF INDUSTRIE S.p.A.,                :
                                              :
            Plaintiffs,                       :
                                              :    Before:      WALLACH, Judge
      v.                                      :    Court No.:   05-00569
                                              :
UNITED STATES,                                :    **PUBLIC VERSION**
                                              :
            Defendant,                        :
                                              :
      and                                     :
                                              :
TIMKEN U.S. CORPORATION,                      :
                                              :
            Defendant-Intervenor.             :
_____:


[Plaintiff's Rule 56.2 Motion for Judgment Upon the Agency Record is DENIED and the
Agency's determination is AFFIRMED.]


                                    **DATED:** May 29, 2007


Steptoe & Johnson LLP, (Herbert C. Shelley, Alice A. Kipel, and Susan R. Gihring) for Plaintiffs
SKF USA Inc., SKF France S.A., SKF Aerospace France, SKF GmbH, and SKF Industrie S.p.A.

Peter D. Keisler, Assistant Attorney General; David M. Cohen, Director, Commercial Litigation
Branch, Civil Division, U.S. Department of Justice (Claudia Burke); and David W. Richardson,
Mykhaylo A. Gryzlov, and Jennifer J. Johnson, Office of Chief Counsel for Import
Administration, U.S. Department of Commerce, of Counsel, for Defendant United States.

Stewart and Stewart, (Terence P. Stewart, William A. Fennell, and Geert De Prest) for
Defendant-Intervenor Timken U.S. Corporation.

## OPINION

**Wallach, Judge:**

## I
## Introduction

Plaintiffs SKF USA Inc., SKF France S.A., SKF Aerospace France, SKF GmbH, and

SKF Industrie S.p.A. (collectively "SKF") challenge the United States Department of

Commerce's ("Commerce" or "the Department") findings in <u>Ball Bearings and Parts Thereof</u>

<u>From France, Germany, Italy, Japan, Singapore and the United Kingdom: Final Results of</u>

<u>Antidumping Duty Administrative Reviews</u>, 70 Fed. Reg. 54,711 (September 16, 2005) ("<u>Final</u>

<u>Results</u>").  The court has jurisdiction pursuant to 28 U.S.C. § 1581(c).

## II
## Background

On September 15, 2005, the Department published in the Federal Register the Final

Results of its Fifteenth Review of ball bearings and parts thereof from France, Germany, Italy,

Japan, Singapore, and the United Kingdom, covering the period of review ("POR") from May 1,

2003 through April 30, 2004. <u>Final Results</u>, 70 Fed. Reg. at 54,711.  The review covers ball

bearings (other than tapered roller bearings) and parts thereof, specifically antifriction balls, ball

bearings with integral shafts, ball bearings (including radial ball bearings) and parts thereof, and

housed or mounted ball bearings united and parts thereof.[1] <u>Id.</u> at 54,712.  In the <u>Final Results</u>,

---

[1] Imports of these products are classified under the following Harmonized Tariff Schedule of the United States (HTSUS) subheadings:

3926.90.45, 4016.93.00, 4016.93.10, 4016.93.50, 6909.19.5010, 8431.20.00, 8431.39.0010, 8482.10.10, 8482.10.50, 8482.80.00, 8482.91.00, 8482.99.05, 8482.99.2580, 8482.99.35, 8482.99.6595, 8483.20.40, 8483.20.80, 8483.50.8040,

Commerce found a 8.41% weighted-average dumping margin for SKF France S.A., 16.06% for

SKF GmbH, and 2.59% for SKF Industrie S.p.A. Id. at 54,713.  SKF does not contest the

antidumping margins for bearings affected by the Final Results from the United Kingdom.

　　　　Oral argument was held on January 24, 2007.

### III
### Standard of Review

　　　　This court will sustain Commerce's determinations, findings, or conclusions unless they

are "unsupported by substantial evidence on the record, or otherwise not in accordance with

law." 19 U.S.C. § 1516a(b)(1)(B); Magnesium Corp. of Am. v. United States, 166 F.3d 1364,

1368 (Fed. Cir. 1999).  Substantial evidence is "such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion." Universal Camera Corp. v. NLRB, 340 U.S.

474, 477, 71 S. Ct. 456, 95 L. Ed. 456 (1951) (citing Consol. Edison Co. v. NLRB, 305 U.S. 197,

229, 59 S. Ct. 206, 83 L. Ed 126 (1938)).  Courts have considered substantial evidence to be

something less than the weight of the evidence; the possibility of drawing two inconsistent

conclusions from the presented evidence does not necessarily prevent an administrative agency's

finding from being supported by substantial evidence. Consolo v. Fed. Mar. Comm'n, 383 U.S.

607, 619-20, 86 S. Ct. 1018, 16 L. Ed. 2d 131 (1966) (citing Labor Board v. Nevada Consol.

─────────────────────

　　　　8483.50.90, 8483.90.20, 8483.90.30, 8483.90.70, 8708.50.50, 8708.60.50,
　　　　8708.60.80, 8708.70.6060, 8708.70.8050, 8708.93.30, 8708.93.5000,
　　　　8708.93.6000, 8708.93.75, 8708.99.06, 8708.99.31, 8708.99.4960, 87083.99.50,
　　　　8708.99.5800, 8708.99.8080, 8803.10.00, 8803.20.00, 8803.30.00, 8803.90.30,
　　　　and 8803.90.90.

Final Results, 70 Fed. Reg. at 54,712.

Copper Corp., 316 U.S. 105, 106, 62 S. Ct. 960, 86 L. Ed. 1305 (1942); Keele Hair & Scalp

Specialists, Inc. v. Fed. Trade Comm'n, 275 F.2d 18, 21 (5th Cir. 1960)).

The court must use a two-step analysis when evaluating Commerce's statutory

interpretation. Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842-43,

104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984).  The court examines, first, whether "Congress has

directly spoken to the precise question at issue," in which case courts, "must give effect to the

unambiguously expressed intent of Congress." Id.; see also Household Credit Servs. v. Pfennig,

541 U.S. 232, 239, 124 S. Ct. 1741, 158 L. Ed. 2d 450 (2004).  Whenever Congress has

"explicitly left a gap for the agency to fill," the agency's regulation is "given controlling weight

unless [it is] arbitrary, capricious, or manifestly contrary to the statute." Chevron, 467 U.S. at

843-44.

> When faced with a problem of statutory construction, this Court shows great
> deference to the interpretation given the statute by the officers or agency charged
> with its administration. 'To sustain the [agency's] application of this statutory
> term, we need not find that its construction is the only reasonable one, or even that
> it is the result we would have reached had the question arisen in the first instance
> in judicial proceedings.'

Udall v. Tallman, 380 U.S. 1, 16, 85 S. Ct. 792, 13 L. Ed. 2d 616 (1965) (quoting

Unemployment Comp. Comm'n v. Aragon, 329 U.S. 143, 153, 67 S. Ct. 245, 91 L. Ed. 136

(1946)).

## IV
## Discussion
### A
### Commerce's Decision to Revise Its Model-Matching Methodology is Supported by Substantial Evidence and is in Accordance with Law

Plaintiffs argue that Commerce's departure from its previous methodology contravenes

4

its long-standing policy to "'maintain a stable, normal, and predictable approach' with regards to model match, and not to alter that methodology unless compelling reasons exist." Plaintiffs' Rule 56.2 Motion for Judgment Upon the Agency Record ("Plaintiffs' Motion") at 10 (citing Polyethylene Terephthalate Film, Sheet, and Strip from the Republic of Korea; Final Results of Antidumping Duty Administrative Reviews and Notice of Revocation in Part, 61 Fed. Reg. 35,177, 35,181 (July 5, 1996) ("Polyethylene")).  Plaintiffs contend that Commerce's decision to change the model match methodology retroactively unfairly deprived Plaintiffs of outcome predictability and that Commerce's justification for changing the methodology departs from its own criteria that sets out when it is appropriate to change a model match methodology. Id.[2]

Specifically, Plaintiffs argue that Commerce created a methodology inconsistent with the principle that model match methodologies reflect market place realities. Id. at 12.  Plaintiffs claim that Commerce has not gained any additional expertise or knowledge of market demand or market realities and that recognizing differences in types of lubricant reflects a misunderstanding of market realities. Id. at 12-13.  Plaintiffs also argue that Commerce violated its normal practice

---

[2] Commerce has articulated that "[i]t is appropriate to consider changes [to a methodology] when additional expertise and knowledge with regard to the market demands and market realities of the products . . . indicate that such changes allow more accurate comparison of U.S. and normal value products." Structural Beams from Korea: Notice of Final Results of Antidumping Duty Administrative Reviews, 70 Fed. Reg. 6,837, 6,838 (February 9, 2005) ("Structural Beams").  Additionally, Commerce's "normal practice is to refrain from revising the model match criteria absent evidence establishing that the model match is not reflective of the merchandise in question, there have been industry changes to the product that merit a modification, or there is some other compelling reason to require a change." Stainless Steel Sheet and Strip in Coils from Germany; Notice of Final Results of Antidumping Duty Administrative Review, 70 Fed. Reg. 73,729, 73,731 (December 13, 2005) ("Stainless Steel"); see also Notice of Final Results of the Eleventh Review of the Antidumping Duty Order on Certain Corrosion-Resistant Carbon Steel Flat Products from the Republic of Korea, 71 Fed. Reg. 7,513 (February 13, 2006) ("Carbon Steel").

of refraining from altering model match criteria absent evidence that the methodology does not properly reflect the product in question, there have been industry changes to the product, or there are other compelling reasons. Id. at 11 (citing Stainless Steel, 70 Fed. Reg. at 73,731; Carbon Steel, 71 Fed. Reg. at 7,514).  Plaintiffs assert that there have been no changes to the products or the industry such that the "family" match methodology previously used no longer reflects the subject merchandise and Commerce has failed to articulate any compelling reason for the change. Id. at 14.  Plaintiffs contend that Commerce's reasons for changing the methodology, technological advancements and increased accuracy, are insufficient and that Commerce has nevertheless failed to show that the new methodology results in increased accuracy. Id. at 14, 18.

Defendant concedes that during the Second Administrative Review Commerce decided to continue applying the family method, but notes that it stated it would continue to evaluate the appropriateness of the method and make alterations when compelling reasons exist. Defendant's Response in Opposition to Plaintiffs' Motion for Judgment Upon the Agency Record ("Defendant's Response") at 5-6.  Timken U.S. Corporation urged Commerce to alter its model match methodology during the Fourteenth Administrative Review and Commere determined at that time that compelling reasons did exist for a modification. Id. at 6 (citing Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From France; et al.; Final Results of Antidumping Duty Administrative Reviews, 57 Fed. Reg. 28,360, cmt.1 (June 24, 1992)).  "Specifically, Commerce determined that a revised methodology: 1) more accurately reflected the intent of 19 U.S.C. § 1677(16),[3] including the statute's preference for identifying

---

[3] 19 U.S.C. § 1677(16) defines the term "foreign like product" as follows:

foreign like product by selecting the single most similar product; 2) reflected the statutory

preference for using price-to-price comparisons; and 3) enabled Commerce to take advantage of

technological developments." Id. (citing Memorandum from Jeffrey A. May, Deputy Assistant

Sec'y for Import Admin., U.S. Dep't of Commerce, to James J. Jochum, Assistant Sec'y for

Import Admin., U.S. Dep't of Commerce, at 4-5 (December 3, 2003) ("Model Match Memo")).

Defendant asserts that because there is sufficient evidence to support these findings, the change

was reasonable and should be sustained by this court. Id. at 16.

Defendant asserts that by using the new method Commerce can identify the single most

similar product because "Commerce can now capture slight differences in the physical

characteristics of the home market and United States model being compared which are still

similar enough to be considered for comparison." Id. at 18.  Defendant also argues that

Commerce is not required "to ensure that home market models are technically substitutable,

────────────────

(A) The subject merchandise and other merchandise which is identical in physical
characteristics with, and was produced in the same country by the same person as,
that merchandise.

(B) Merchandise–
        (i) produced in the same country and by the same person as the subject
merchandise,
        (ii) like that merchandise in component material or materials and in the
purposes for which used, and
        (iii) approximately equal in commercial value to that merchandise.

(C) Merchandise–
        (i) produced in the same country and by the same person and of the same
general class or kind as the subject merchandise,
        (ii) like that merchandise in the purposes for which used, and
        (iii) which the administering authority determines may reasonably be
compared with that merchandise.

purchased by the same type of customers, or applied to the same end as the U.S. model." Id. at 18 (citing Memorandum from Barbara E. Tillman, Acting Deputy Assistant Sec'y for Import Admin., U.S. Dep't of Commerce, to Ronald K. Lorentzen, Acting Assistant Sec'y for Import Admin., U.S. Dep't of Commerce, Issues and Decision Memorandum for the Antidumping Duty Administrative Reviews of Ball Bearings and Parts Thereof from France, Germany etc. for the Period of Review May 1, 2003, through April 30, 2004, at 24 (September 12, 2005) ("Issues & Decision Memo") (citing Koyo Seiko Co. v. United States, 66 F.3d 1204, 1210 (Fed. Cir. 1995))).  Defendant explains that the new methodology allows for a greater number of price-to-price comparisons because Commerce is now able to use fewer constructed values. Id. at 20.

Plaintiffs contend that changes in technology should not be considered because "Commerce never stated it was in some way technologically limited from more accurately calculating similar merchandise" when it created the family method. Plaintiffs' Motion at 16. Defendant counters that technological advancements are merely the means by which Commerce is able to implement a more accurate revised methodology and that as such, Commerce implicitly recognized these limitations in its original methodology. Defendant's Response at 21-22. Plaintiffs also argue that it is not valid to assert that technological constraints prohibited Commerce from selecting the most similar model in prior reviews because Commerce had been making such selections in older cases and because Commerce used a most similar method in the original investigation. Plaintiffs' Motion at 15, 19.

Defendant-Intervenor argues that the new method enhances Commerce's role in model match and data collection. Response of Timken U.S. Corporation to the Rule 56.2 Motion of SKF USA Inc., et al. ("Timken's Response") at 19.  Timken states that, using the new method,

U.S. sales of models that differ only in size or load rating are no longer excluded if the models match on the first four "most fundamental" characteristics. Id. at 20.  Additionally, when using the family method Commerce was dependent on the family code provided by respondents to match similar products, whereas when using the new method Commerce performs the matching itself using additional data reported by respondents and the program designed by the agency. Id. Commerce selects the appropriate comparison products on the basis of physical characteristics, variable costs of manufacturing, and the reported date of sale and level of trade. Id. at 9.

The parties disagree as to whether it was proper to apply the new methodology retroactively.  Plaintiffs state that a fair administration of antidumping laws has required Commerce, in certain circumstances, to adhere to methodologies it sought to alter.[4] Reply Brief in Support of SKF's Rule 56.2 Motion for Judgment Upon the Agency Record ("Plaintiffs' Reply") at 12-13, (citing Shikoku Chems. Corp. v. United States, 16 CIT 382, 388, 795 F. Supp. 417, 421 (1992)).  Plaintiffs state that this court has held that "'while reliance cannot be presumed,' if a party establishes reliance on a methodology or law in effect at that time, then the retroactive application of a change in methodology or law is unlawful." Id. at 13 (citing Brother Indus., Ltd. v. United States, 15 CIT 332, 339, 771 F. Supp. 374, 382 (1991); Fujian Mach. & Equip. Imp. & Exp. Corp. v. United States, 25 CIT 1150, 1170, 178 F. Supp. 2d 1305, 1327 (2001)).  Plaintiffs assert that they relied upon Commerce's long-standing family model match methodology during the period of review and even with advance notice of the possible change they could not anticipate what that change would be and therefore could make no revisions. Id. at

---

[4] Plaintiffs do not elaborate on these circumstances.

13-14.

Defendant asserts that retroactivity is not a basis for challenge and that requiring Commerce to apply changes only to prospective reviews and not to prospective entries "would paralyze Commerce's ability to change its own practices." Defendant's Response at 24. Defendant contends that the antidumping scheme is constructed in such a way as to always apply Commerce's decisions retroactively. Id. at 24-25 (citing Abitibi-Consol. Inc. et al., v. United States, 437 F. Supp. 2d 1352, 1361 (CIT 2006)). Defendant also asserts that Commerce met the notice requirement in 19 U.S.C. § 1677m(g)[5] by informing the interested parties that it had determined it was appropriate to change the model match methodology, soliciting comments, and providing the parties affected by the change an opportunity to comment before the final determination. Id. at 23-24.

The standard by which this court reviews Commerce's decision is whether Commerce reasonably determined that there were compelling reasons to revise the model match methodology. Hangzhou Spring Washer Co. v. United States, 387 F. Supp. 2d 1236, 1246 (CIT 2005). The agency must set forth the grounds for change when the court considers the bases of

---

[5] 19 U.S.C. § 1677m(g) states:

Information that is submitted on a timely basis to the administering authority or the Commission during the course of a proceeding under this subtitle shall be subject to comment by other parties to the proceeding within such reasonable time as the administering authority or the Commission shall provide. The administering authority and the Commission, before making a final determination under section [ ]1671d, 1673d, 1675, or 1675b of this title shall cease collecting information and shall provide the parties with a final opportunity to comment on the information obtained by the administering authority or the Commission (as the case may be) upon which the parties have not previously had an opportunity to comment. Comments containing new factual information shall be disregarded.

the agency's action and whether it is consistent with the agency's mandate. <u>Luoyang Bearing</u>

<u>Corp. v. United States</u>, 347 F. Supp. 2d 1326, 1333 (CIT 2004); <u>see</u> <u>NTN Bearing Corp. v.</u>

<u>United States</u>, 295 F.3d 1263, 1269 (CIT 2002).

      In <u>Timken Company v. United States</u>, 630 F. Supp. 1327, 1337 (CIT 1986), this court

recognized that the intent of the applicable statute, 19 U.S.C. § 1677(16)(B), is to compare

foreign like product to the single most similar United States model.  The new method allows

Commerce to select the most similar model by allowing the comparison of models with only

slight physical differences that are still similar enough to result in a suitable comparison. <u>Issues</u>

<u>& Decision Memo</u> at 24.  Selection of the single most similar model also allows for a greater

number of reasonable price-to-price comparisons, as is the statutory preference. 19 U.S.C. §

1677b(a)(1)(A); Uruguay Round Agreements Act, Statement of Administrative Action, H.R.

Doc. No. 103-316, at 820 (1994), <u>reprinted in</u> 1994 U.S.C.A.N.N. 4040, 4161 ( "[T]he preferred

method for identifying and measuring dumping is to compare home market sales of the foreign

like product to export sales to the United States.").  Under the family methodology Commerce

was forced to use constructed value for two-thirds of all models for which there were no

contemporaneous sales of the identical model, rather than in a price-to-price analysis.

Memorandum from Barbara E. Tillman, Acting Deputy Assistant Sec'y for Import Admin., U.S.

Dep't of Commerce, to Joseph A. Spetrini, Acting Assistant Sec'y for Import Admin., U.S. Dep't

of Commerce, at 6-7 (May 6, 2005).  By contrast, under the new methodology, price-to-price

comparisons, rose from 30 to 70 percent, without the need for constructed value. <u>Id.</u> at 14.

      The new methodology also enables Commerce to take advantage of technological

advancements.  When the family method was developed over sixteen years ago technological

resources were far less powerful than they are today. <u>See</u> Model Match Memo at 3.  Commerce

used an offsite mainframe computer that was significantly slower and much more expensive than

desktop computers in use today. <u>Id.</u>  Running the program for just one of the large bearing

companies often required three to four hours of processing time and in the first several reviews

analysts had to use special terminals just to access the mainframe computer. <u>Id.</u>  Few terminals

were available, they were expensive to use, and the cost was a function of the amount of central

processing time used. <u>Id.</u>  Had Commerce employed a more complex model match methodology

to identify the single most similar model, "it would have been prohibitively expensive and time

consuming." <u>Id.</u>  Today, much more powerful personal computers are used by Commerce to run

all new margin-calculation programs. <u>Id.</u> at 4.  All analysts can work simultaneously on their own

computers without processing charges. <u>Id.</u>  These technological advancements are the means by

which Commerce is able to implement a more accurate model match methodology.  Plaintiffs are

incorrect in their assertion that Commerce did not consider technological constraints when the

family method was created.  Technological constraints were strongly implied when Commerce

explained that it was creating a family methodology to "minimize the necessity for comparisons

among an exceptionally large number of bearing models." Letter from Bernard T. Carreau, Div.

Dir., Office of Antidumping Compliance, U.S. Dep't of Commerce (July 13, 1990).  Because

these constraints have been lifted, Commerce is free to develop a more accurate methodology so

long as that methodology is reasonable.

Moreover, because technological constraints made it difficult for Commerce to select the

most similar model in prior reviews, it is within Commerce's expertise and discretion to update

its methodology for both increased accuracy and ease of use. <u>See</u> <u>S. Cal. Edison Co. v. United</u>

States, 226 F.3d 1349, 1357 (Fed. Cir. 2000) ("Deference is particularly appropriate when the agency is applying its regulations to a complex or changing circumstance, thus requiring the agency to bring to bear its unique expertise and policy-making prerogatives.").  The fact that the model matching task in the original investigation was assigned to the respondents, and not performed by Commerce, supports Commerce's stance that it did not have the technological resources to employ a most similar model matching method when the family method was created. Preliminary Determination of Sales at Less Than Fair Value: Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof from the Federal Republic of Germany, 53 Fed. Reg. 45,353, 45,355-45,356 (November 9, 1988).

In assessing the reasonableness of its decision, the court observes that Commerce made the changes only after providing the parties with an opportunity to submit comments and after they received reasonable notice of the implementation of the revised methodology, as required by statute. Model Match Memo at 6-7.  Indeed, Commerce extended the comment period and made modifications to its methodology based on the parties' comments and continued to employ the old methodology for the calculation of weighted-average margins. Letter from Laurie Parkhill, Dir., Office 3, AD/CVD Enforcement Group, Dep't of Commerce, to All Interested Parties (January 9, 2004); Issues & Decision Memo at 30-31.  The new model match methodology rests on the same eight characteristics used in the family averaging methodology, but instead of requiring all eight physical characteristics to match, redefines the "family" to represent those bearings with the physical characteristics of bearing design, load direction, number of rows, and precision grade. Memorandum from Mark Ross, Acting Office Dir., AD/CVD Enforcement, U.S. Dep't of Commerce, to Jeffrey May, Deputy Assistant Sec'y for Import Admin., Group 1, U.S.

13

Dep't of Commerce, at 7 (July 7, 2004) ("Notice of Revised Methodology").

While Plaintiffs' assert that Commerce informed the parties on July 7, 2004 that precision grade would be a defining characteristic in its new methodology, in fact, Commerce had stated it would consider precision grade, if appropriate, on a case by case basis. See Plaintiffs' Motion at 6; Notice of Revised Methodology at 7.

In addition, Commerce's decision to consider lubricant type in its new methodology, based on its observation that differences in lubricants had a significant effect on cost, is within its discretion to make a modification. See S. Cal. Edison Co., 226 F.3d at 1357; Issues & Decision Memo at 37.  Though Plaintiffs argue that Commerce should have treated certain "standard" lubricants as equivalent, they failed to raise this issue during the open comment period prior to publication of the final determination. Issues & Decision Memo at 37.

Commerce does indeed express its preference for maintaining a stable methodology across reviews unless compelling reasons exist. Polyethylene, 61 Fed. Reg. at 35,181.  It is also Commerce's policy to make changes where compelling reasons exist and this court will review Commerce's decision for reasonableness. Hangzhou Spring Washer, 387 F. Supp. at 1246.  Here, Commerce has provided a reasonable basis for its changes.  This court has previously noted that "the absence of certainty regarding the dumping margins and final assessment of antidumping duties is a characteristic of the retrospective system of administrative reviews designed by Congress," and to require all changes be applied only prospectively would hamper Commerce's ability to change its own practices. Abitibi-Consol., 437 F. Supp. 2d at 1361.

Plaintiffs cite Shikoku Chems. as requiring Commerce to adhere to a methodology on the

basis of fairness.  In Shikoku Chems., the court determined that Commerce had "abused its

discretion in adopting a slightly improved allocation methodology in the face of years of

acceptance of the prior approach." Shikoku Chems., 795 F. Supp at 420-21.  In explaining its

decision, the court noted that "Commerce does not argue that key facts changed.  Such changes

could warrant a new approach.  Nor was there a breakthrough in methodology which would

reveal significant and heretofore undiscovered dumping." Id.  Shikoku Chems. is distinguishable

from the case sub judice precisely because Commerce's position is that technological

advancements have allowed for a more accurate methodology, which in this case do "warrant a

new approach." Id. at 421.

In sum, Commerce acted within its own discretion and in accordance with law.

Substantial evidence exists to support a finding that Commerce acted reasonably.  Accordingly,

Commerce's determination is sustained.

**B**
**Commerce's Use of its Zeroing Methodology is Supported by Substantial Evidence and in Accordance with Law**

SKF argues that Commerce's practice of assigning a zero margin to export price ("EP")

or constructed export price ("CEP") sales made above normal value ("NV") is a violation of the

plain language of the statute and international agreements, is unsupported by an agency

explanation, and is unjustified as a measure to combat masked dumping. Plaintiffs' Reply at 14.

SKF further argues that stare decisis is inapplicable here because different statutory provisions

were at issue in previous challenges to zeroing that were struck down by the Federal Circuit.

Plaintiffs' Motion at 22; see also Corus Staal, BV v. United States, 395 F.3d 1343, 1346 (Fed.

Cir. 2005); <u>Timken Co. v. United States</u>, 354 F.3d 1334 (Fed. Cir. 2004).  Because the issue was

not explicitly ruled on, SKF claims those decisions do not have the effect of <u>stare decisis</u>.

Plaintiffs' Motion at 21-22.  Alternatively, SKF argues that even if the court finds <u>stare decisis</u>

applicable to this case, it may "exercise its discretion to not follow the Federal Circuit's decisions

in <u>Timken</u> and <u>Corus Staal</u>[]." <u>Id.</u> at 22.  SKF also asserts that because the plain language of the

dumping statute is clear, the inquiry under <u>Chevron</u> ends at the first prong, and therefore

deference should not be paid to Commerce. <u>Id.</u> at 25.

Defendant counters that Commerce's treatment of nondumped sales has been repeatedly

sustained by this court and the Federal Circuit. Defendant's Response at 26.

Plaintiff notes that "<u>stare decisis</u> is not 'an inexorable command; rather it 'is a principle

of policy and not a mechanical formula of adherence to the latest decision.'" Plaintiffs' Motion

at 22-23 (quoting <u>Payne v. Tennessee</u>, 501 U.S. 808, 828, 111 S. Ct. 2597, 115 L. Ed. 2d 720

(1991)).  However, Plaintiff's interpretation of the doctrine of <u>stare decisis</u> as applied to this case

is wholly incorrect.  Following Federal Circuit precedent here is not merely blind adherence or an

automatic application by this court, as SKF asserts.  Neither can the Federal Circuit's discussion

of zeroing be described as "merely lurk[ing] in the record, neither brought to the attention of the

court nor ruled upon." <u>Id.</u> at 21 (quoting <u>Webster v. Fall</u>, 266 U.S. 507, 511, 45 S. Ct. 148, 69 L.

Ed. 411 (1925)).  To the contrary, the practice of zeroing was squarely addressed by <u>Timken</u> and

<u>Corus Staal</u>. <u>Timken</u>, 354 F.3d 1334; <u>Corus Staal</u>, 395 F.3d 1343.  The fact that the underlying

calculations in <u>Corus Staal</u> involved a different subsection of the statute than the statute at issue

in the case <u>sub judice</u> does not render <u>stare decisis</u> inapplicable.[6] <u>Stafford</u>, 444 U.S. at 535 (interpreting a statutory clause, a court considers the entire provision and purpose).  As Timken aptly points out, "SKF's assertions constitute new argument only, and new argument does not avoid the precedent." Timken's Response at 27.  Further, a lower court may not ordinarily disregard its reviewing court's precedent. <u>Strickland v. United States</u>, 423 F.3d 1335, 1338 n.3 (Fed. Cir. 2005).

Although the Federal Circuit in <u>Corus Staal</u> did not hold that the statute "unambiguously requires providing for zeroing negative margin transactions," as Plaintiff argues, such a directive is not necessary for Commerce's interpretation to be upheld. <u>See</u> Plaintiffs' Motion at 25 (quoting <u>Timken</u>, 354 F.3d at 1341; <u>Corus Staal</u>, 395 F.3d 1343).  Pursuant to this court's firmly established review standard, this court need only find that Commerce's interpretation was a reasonable one. <u>Udall v. Tallman</u> 380 U.S. at 16; <u>Consolo</u>, 383 U.S. at 619-20.

Plaintiff also proposes that the Federal Circuit cases which upheld the practice of zeroing should have curtailed their analysis at step one of the <u>Chevron</u> inquiry because the plain language of the statute is clear and because "Congress has spoken directly to the question at issue and its intent that Commece use both negative and positive values is clear . . . ." Plaintiffs' Motion at 25,

---

[6] Plaintiff further argues that Commerce's use of zeroing in a review conflicts with 19 U.S.C. §§ 1677(35)(A), 1675(a)(2), and 1673e(c)(3). Plaintiffs' Motion at 29-30.  In sustaining Commerce's treatment of nondumped sales, the Federal Circuit in both <u>Timken</u> and <u>Corus Staal</u> expressly addressed 19 U.S.C. § 1675(a)(2) and § 1677(35)(A) and presumably considered the entire statute. <u>Timken</u>, 354 F.3d at 1338 ("Finally, Commerce uses this weighted-average dumping to calculate the duties owed on an entry-by-entry basis. 19 U.S.C. § 1675(a)(2)."); <u>Corus Staal</u>, 395 F.3d at 1347 n.3 (quoting § 1675(a)(2)(A)); <u>see also</u> <u>Stafford v. Briggs</u>, 444 U.S. 527, 535, 100 S. Ct. 774, 63 L. Ed. 2d 1 (1980) (statutory provision should be considered in light of the entire statute and purpose)

27.  SKF also argues that because the Government states its zeroing methodology is "not

mandated by statute or regulation," any deference is unwarranted. Id. at 26.  Absent any new

information which shows circumstances have changed, or some reason for a different Chevron

analysis, there is no need to re-examine zeroing at this time. See Paul Muller Industrie GmbH v.

United States, 435 F. Supp. 2d 1241, 1245 (CIT 2006) (sustaining zeroing in the 14th review);

NSK Ltd. v. United States, 416 F. Supp. 2d 1334, 1338 (CIT 2006) (sustaining zeroing in the

13th review).

     Because zeroing has been affirmed and settled by the Federal Circuit in Corus Staal and

Timken, there is no reason to overturn Commerce's zeroing practice based upon a ruling by the

WTO "unless and until such ruling has been adopted pursuant to the specified statutory scheme."

Paul Muller, 435 F. Supp. 2d at 1245; See Gilda Industries, Inc. v. United States, 446 F.3d 1271,

1284 (Fed Cir. 2006) (stating that no person other than the United States "may challenge, in any

action brought under any provision of law, any action or inaction by any department, agency, or

other instrumentality of the United States . . . on the ground that such action or inaction is

inconsistent with [the Uruguay Round Agreements].") (quoting 19 U.S.C. § 3512(c)(1)(B));

Corus Staal, 395 F.3d at 1348.  Because no such ruling has been adopted in this case,[7] there is no

---

     [7] On October 31, 2005, a World Trade Organization ("WTO") Panel found, inter alia, that
Commerce's practice of zeroing when calculating dumping margins using average-to-average
comparisons in investigations was inconsistent with U.S. obligations under the WTO
Antidumping Agreement. Panel Report, United States - Laws, Regulations and Methodology for
Calculating Dumping Margins, ¶¶ 7.32, 7.1, WT/DS294/R (October 31, 2005) ("U.S. - Zeroing
Panel Report").  The United States did not appeal the Report and in March 2006 started to
implement the WTO's findings by initiating a proceeding under Section 123(g) of the Uruguay
Round Agreements Act ("URAA"), 19 U.S.C. § 3533(g) ("Section 123"), in which it stated that
it "will abandon" the use of zeroing in average-to-average computations and that it would change
its margin computation methodology to bring certain challenged reviews into compliance with
the WTO's findings. Antidumping Proceedings: Calculation of the Weighted Average Dumping

reason to re-examine the issue of zeroing at this juncture.

## V
## Conclusion

For the above stated reasons, Commerce's determination in <u>Ball Bearings and Parts</u>

<u>Thereof From France, Germany, Italy, Japan, Singapore and the United Kingdom: Final Results</u>

<u>of Antidumping Duty Administrative Reviews</u>, 70 Fed. Reg. 54,711 (September 16, 2005) is

sustained.


                              _/s/ Evan J. Wallach_____
                               Evan J. Wallach, Judge


Dated:        May 29, 2007
              New York, New York

─────────────────────

Margin During an Antidumping Duty Investigation, 71 Fed. Reg. 11,189 (March 6, 2006).  On
December 27, 2006, Commerce published in the Federal Register its final Section 123
determination, ending the practice of zeroing in antidumping investigations using average-to-
average comparisons, and scheduling the effective date for adoption of the new policy for
January 16, 2007. See Antidumping Proceedings: Calculation of the Weighted-Average Dumping
Margin During an Antidumping Investigation; Final Modification, 71 Fed. Reg. 77,722
(December 27, 2006).  On April 9, 2007, Commerce issued its final Section 129 Determination,
implementing the U.S.-Zeroing Panel Report as to the challenged antidumping investigations.
See Memorandum from Stephen Claeys, Deputy Assistant Sec'y for Import Admin., U.S. Dep't
of Commerce, to David Spooner, Assistant Sec'y for Import Admin., U.S. Dep't of Commerce,
Issues and Decision Memorandum for the Final Results of the Section 129 Determinations (April
9, 2007), available at http://ia.ita.doc.gov/download/zeroing/zeroing-sec-129-final-decision-
memo-20070410.pdf.  On April 23, 2007, the U.S. Trade Representative instructed Commerce to
implement its findings under section 129 of the URAA. See Implementation of the Findings of
the WTO Panel in US-Zeroing (EC): Notice of Determinations Under Section 129 of the
Uruguay Round Agreements Act and Revocations and Partial Revocations of Certain
Antidumping Duty Orders, 72 Fed. Reg. 25,261 (May 4, 2007).

UNITED STATES COURT OF INTERNATIONAL TRADE

```
_____
                                    :
SKF USA INC., SKF FRANCE S.A.,      :
SKF AEROSPACE FRANCE, SKF           :
GmbH and SKF INDUSTRIE S.p.A.,      :
                                    :
          Plaintiffs,               :
                                    :      Before:      WALLACH, Judge
     v.                             :      Court No.:   05-00569
                                    :
UNITED STATES,                      :
                                    :
          Defendant,                :
                                    :
     and                            :
                                    :
TIMKEN U.S. CORPORATION,            :
                                    :
          Defendant-Intervenor.     :
_____ :
```

ORDER AND JUDGMENT

This case having come before the court upon the Rule 56.2 Motion for Judgment Upon the Agency Record filed by SKF USA Inc., SKF France S.A., SKF Aerospace France, SKF GmbH and SKF Industrie S.p.A.; the court having reviewed all pleadings and papers on file herein, having heard oral argument, and after due deliberation, having reached a decision herein; now, in conformity with said decision, it is hereby

ORDERED ADJUDGED AND DECREED that Plaintiff's Motion is DENIED; and it is further

ORDERED ADJUDGED AND DECREED that the decision of the U.S. Department of Commerce ("Commerce") in Ball Bearings and Parts Thereof From France, Germany, Italy, Japan, Singapore and the United Kingdom: Final Results of Antidumping Duty Administrative Reviews, 70 Fed. Reg. 54,711 (September 16, 2005) is hereby SUSTAINED; and it is further

ORDERED that all parties shall review the court's Opinion in this matter and notify the court in writing on or before Friday, June 8, 2007, whether any information contained in the Opinion is confidential, identify any such information, and request its deletion from the public version of the Opinion to be issued thereafter.  The parties shall suggest alternative language for any portions they wish deleted.  If a party determines that no information needs to be deleted, that party shall so notify the court in writing on or before June 8, 2007.


_/s/ Evan J. Wallach_____
Evan J. Wallach, Judge

Dated: May 29, 2007
       New York, New York

# NOTICE OF ENTRY AND SERVICE

This is a notice that an order or judgment was entered in the docket of this action, and was served upon the parties on the date shown below.

Service was made by depositing a copy of this order or judgment, together with any papers required by USCIT Rule 79(c), in a securely closed envelope, proper postage attached, in a United States mail receptacle at One Federal Plaza, New York, New York 10278 and addressed to the attorney of record for each party at the address on the official docket in this action, except that service upon the United States was made by personally delivering a copy to the Attorney-In-Charge, International Trade Field Office, Civil Division, United States Department of Justice, 26 Federal Plaza, New York, New York 10278 or to a clerical employee designated, by the Attorney-In-Charge in a writing filed with the clerk of the court.

or

Service was made electronically, by the Court's CM/ECF system, upon those parties that have filed a Notice of Consent to Electronic Service.

Tina Potuto Kimble
Clerk of the Court

Date: _____     By: _____
                                             Deputy Clerk